**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Corbin A McNeill, Jr., | No. CV-23-02481-PHX-SMM |
| Plaintiff, | **ORDER** |
| v. | |
| CP Boulders LLC, | |
| Defendant. | |

Pending before the Court is Plaintiff's Fourth Motion for Partial Summary Judgment. (Doc. 46). The Motion is fully briefed. (Docs. 65; 71). For the following reasons, the Court grants Plaintiff's Motion.

**I.      BACKGROUND**

Since 2011, Plaintiff Corbin McNeill ("Plaintiff") has been a member of The Boulders Club, a private golf and social club located in Scottsdale, Arizona. (Doc. 1-1 at 5). Upon joining The Boulders Club, members receive a Membership Plan, The Boulders Club Membership Agreement and Bylaws ("Membership Agreement" and "Original Bylaws"), and the Rules and Regulations of the Club. (Id. at 4). The documents are collectively referred to as the "Club Documents." (Id. at 5). The Club Documents constitute a binding, enforceable contract between the members and the ownership. (Id.)

Defendant CP Boulders LLC ("Defendant") purchased The Boulders in 2015. (Id. at 7–8). The Membership Agreement was amended at that time to reflect Defendant's ownership of The Boulders, but no substantive changes were made to the Membership

Agreement. (Id. at 8). When Defendant became owner of The Boulders, Defendant became bound by the obligations of the Membership Agreement. (Id.) On March 10, 2023, Defendant amended the Bylaws ("Amended Bylaws"). (Doc. 54 at ¶ 10). Plaintiff disputes the validity of the Amended Bylaws. (Id. at 12–13).

When Plaintiff became a Premier Golf member in 2011, his rights, privileges, and obligations were governed by the Original Bylaws. Plaintiff's rights included some access to "Club Facilities," including access to one-half of "eight (8) tennis courts" and "any replacements or relocations []" of the courts. (See Doc. 38-1 at 5, 7; Doc. 46 at 1–3).

Also notable is Section 7.3(G) of the Original Bylaws, which enumerates certain sections of the Membership Agreement that require a majority vote of 50% or more of active members in order to enact an amendment that has a material or adverse effect on current members' rights, including Section 2.1:

> Amendment to the Membership Agreement: Provided that any modification of this Agreement does not materially or adversely affect the then-current Members' rights under Section[] **2.1** . . . The Boulders, in its sole discretion, shall be entitled to unilaterally modify and amend this agreement (including establishing, changing, and terminating various Membership classifications and the terms of admission, privileges and facilities available to the Members within each Membership classification).

(Doc. 38-1 at 27; Doc. 65 at 3 n.2, 5) (emphasis added).

Further, Section 7.3(F) of the Original Bylaws provides that the Board of Directors will provide the final decision on all questions involving interpretation, construction, or rights and privileges within the Agreement, provided that the Board acts reasonably and in good faith:

> Interpretation. All decisions of the Board of Directors shall be final on all questions involving the interpretation or construction of this Agreement, the rights and privileges of the Members under this Agreement, the Membership Plan and the Rules and Regulations. In resolving such questions, the Board of Directors shall act reasonably and in good faith.

(Doc. 38-1 at 27; Doc. 65 at 7).

The parties now volley their dispute from the tennis and pickleball courts to this Court. Plaintiff filed suit against Defendant in the Maricopa County Superior Court on October 31, 2023, bringing claims for breach of contract. (Doc. 1-1 at 2). Defendant removed the action to this Court on November 3, 2023. (Doc. 1). Plaintiff has filed six

discrete Motions for Partial Summary Judgment. (See Docs. 36; 37; 45; 46; 60; 61). Plaintiff has since withdrawn his third Motion for Summary Judgment. (Doc. 80). The Court denied Plaintiff's first Motion for Summary Judgment, (Doc. 98), and granted in-part Plaintiff's second Motion for Summary Judgment (Doc. 103). In the instant fourth Motion for Summary Judgment, Plaintiff moves the Court to find that the conversion of three (3) of the eight (8) tennis courts into twelve (12) pickleball courts and subsequent denial of access to the pickleball courts represents a breach of contract of Plaintiff's rights as provided by the Original Bylaws. (Doc. 46 at 2, 3). The Court reviews.

## II.  LEGAL STANDARD

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III.  DISCUSSION

Plaintiff moves the Court to find that Defendant breached its contract with Plaintiff by denying access to the pickleball courts, arguing that (1) Section 2.1(B)(iii) of the bylaws includes the pickleball courts as a "replacement," and (2) Plaintiff's rights under Section 2 were procedurally protected under Section 7.3(G) from "material" or "adverse" change absent a majority vote approving any such proposed change.

Defendant argues that Plaintiff's Motion should be denied on several grounds. As an initial matter, Defendant argues that the parties should be allowed to conduct discovery before the consideration of this Partial Motion for Summary Judgment. (Doc. 65 at 2).

Defendant failed to file a formal Motion Rule 56(f) Motion for Extension of Time. "Federal Rule of Civil Procedure 56(f) provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." Grismore v. Sw. Credit Sys., L.P., 2006 WL 2380679 at *1; citing U.S. v. Kitsap Physicians Serv., 314 F.3d 995, 1000 (9th Cir. 2002). Even without a formal Motion, the Court finds further discovery to develop affirmative evidence to be unnecessary due to the limited scope and purely contractual nature of the issue before it. Further, Defendant argues that it is within its discretion, under Section 7.3(G), to unilaterally change the Bylaws insofar as certain enumerated sections are not materially or adversely affected; unincluded as an enumerated protected provision is Section 1.1, which defines "Club Facilities" to include "eight (8) tennis courts." (Id. at 5). Finally, Defendant argues that the change from tennis courts into pickleball courts was not a "replacement," but rather a "conversion," a purportedly meaningful difference in that a conversion is argued to be within Defendant's rights. (Id. at 3, 6).

**A. Section 2.1(B)(iii) in the Original Bylaws granted Plaintiff access to the pickleball courts.**

Written contracts must be read as a whole, and every part interpreted in reference to the whole, with reasonable interpretations given preference. Wapato Heritage, L.L.C. v. U.S., 637 F.3d 1033, 1039 (9th Cir. 2011) (citation modified); See Restatement (Second) of Contracts § 202(2) (A.L.I. 1981). Each section of a contract must be read, giving effect to each section in relation between all parts of the writing to bring harmony. Chandler Med. Bldg. Partners v. Chandler Dental Grp., 175 Ariz. 273, 277 (1993); Gesina v. Gen. Elec. Co., 162 Ariz. 39, 45; 780 P.2d 1380, 1386 (App. 1988). "As a corollary, the court will not construe one provision in a contract so as to render another provision meaningless." Chandler Med. Bldg., 175 Ariz. at 277 (1993); Norman v. Recreation Ctrs. of Sun City, Inc., 156 Ariz. 425, 428; 752 P.2d 514, 517 (App. 1988).

Here, upon reading the Original Bylaws as a whole, and Sections 1.1, 2.1(B)(iii), 7.3(G), and 7.3(F) in reference to the whole, it is evident that the Original Bylaws granted access to the tennis courts and any replacements thereof. The parties disagree about

whether pickleball courts are a replacement, as argued by Plaintiff, or a conversion, as argued by Defendant.

Defendant argues that the pickleball courts were not "replacements" but rather a "conversion." Therefore, Defendant reasons, Plaintiff's access to the tennis courts should remain at "one-half" of the now five tennis courts, as three tennis courts were converted into pickleball courts. Such a conversion is stated to be in line with the Board's independent power to modify Members' privileges as provided under Section 7.3(G). (Doc. 65 at 6–7). Defendant argues that the definition of "replacement" as applicable in the insurance context applies here. (Id.) In this context, a "replacement cost" is the cost of replacing an asset with one that is "[qualitatively] equivalent to an asset currently held." (Id.) Defendant argues that because pickleball courts and tennis courts are qualitatively different due to the difference in size and equipment, it cannot be deemed a replacement. (Id.) While the two are different sports, their differences are immaterial to the question at issue. The Court disagrees that definition based on insurance law fits in this context. This contract does not reference insurance law concepts of replacing insured goods with a perfectly duplicative replacement.

Conversely, Plaintiff argues that the pickleball courts were "replacements" in that they took the place of the tennis courts. (Doc. 46 at 7). The Court agrees, as Plaintiff's argument is more in line with the plain and ordinary meaning of "replacements." Here, replacing one facility with another that is like in nature, even if not exact, is contemplated in the contract. Both tennis courts and pickleball courts are alike in nature, and, in the context of this contract, one can plainly be seen as a replacement for the other. Moreover, the Premier Golf members have the most expansive access to the facility's amenities, (Doc. 38-1 at 7–9), and all tiers of membership have the same level of access to the tennis courts: access to one-half of the courts. (Doc. 38-1 at 7, 10, 11). Plainly, and throughout the contract, access to the tennis courts is provided therein. This wide-reaching permission supports its inherent value: all Members seek to have access to the tennis courts, and the facility seeks to entice Members to join by granting such access. The importance of

maintaining access to a replacement of a valued amenity is therefore considered here.

"[T]he fundamental goal of contract interpretation is to give effect to the mutual intent of the parties *as it existed at the time* of contracting." Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. Cal., 813 F.3d 1155, 1165 (9th Cir. 2015); U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*,* 281 F.3d 929, 934 (9th Cir. 2002) (emphasis added). To determine the parties' intent, the Court "look[s] to the plain meaning of the words as viewed in the context of the contract as a whole." Parsons v. Ryan, 912 F.3d 486, 497 (9th Cir. 2018); citing Earle Invs., LLC v. S. Desert Med. Ctr. Partners, 242 Ariz. 252, 255; 394 P.3d 1089 (Ct. App. 2017). "If the contractual language is clear, we will afford it its plain and ordinary meaning and apply it as written." Liberty Ins. Underwriters, Inc. v. Weitz Co., L.L.C., 215 Ariz. 80, ¶ 8; 158 P.3d 209, 212 (App. 2007).

Here, the Court finds that the intent of the parties as existed at the time of contracting was to protect access to the tennis courts and any replacements thereof. The nature of a contract for a social club membership implicates that the facility might change over time for any number of reasons. To illustrate, both Members and facilities can expect renovations (necessary or elective), rising or diminishing popularity of certain amenities, and financial considerations that may call for changes in facilities. If Defendant intended to provide access only to half of the courts that were available at that specific point in time, with a narrow definition for replacements, it would have been specifically noted. The presence of "replacements" at all indicates some foresight into changes in facilities, and any removal of access should have been specified here. Additionally, implicit in the decision to include "replacements" in the contract is the intent to ensure continued access to a similar facility.

Such contemplation of "replacements" of the tennis courts also dispels the argument raised by Defendant that Section 2.1(B)(iii) never used the specific phrase "pickleball courts." (Doc. 65 at 4). Such use was unnecessary, as it was contemplated by the use of "replacements."

///

**B. Section 7.3(G) does not allow modification of Section 2.1(B)(iii) because the denial of access to the pickleball courts is a material and adverse modification which requires a majority approval vote from the Members.**

Section 7.3(G) allows for Defendant to "unilaterally modify and amend his Agreement (including establishing, changing, and terminating . . . the terms of admission, privileges, and facilities available)" when the modification or amendment does not "materially or adversely affect the then-current Members' rights under Sections [] 2.1 . . ." (Doc. 38-1 at 27) (Section 2.1. grants Members access to "one-half of the tennis courts." (Doc. 38-1 at 7; Doc. 46 at 4)). Section 1.1 further defines tennis courts to include "eight (8) tennis courts . . . and any replacements." (Doc. 38-1 at 5). Therefore, the Court must decide if the removal of access to one-half of tennis courts or its replacements presents a material or adverse modification. (Doc. 38-1 at 7).

Here, the Court finds that changing the definition of "club facilities" to lower the amount of tennis courts Plaintiff has access to, and the subsequent denial of access to pickleball courts as a replacement, presents a material and adverse modification which required a majority approval vote from members. Plaintiff was granted access to one-half of the eight tennis courts, and any material or adverse modification was specifically noted to require a majority vote in approval. Defendant unilaterally, and against the contractually required process, changed Plaintiff's right to access the tennis courts by lowering the total amount of tennis courts. Such modification is material, as it modified Plaintiff's rights. Next, the modification reduced the right of access for one-half of the tennis courts or its replacements. Originally, Plaintiff was able to access four tennis courts (half of Defendant's eight tennis courts). Now, there are only five tennis courts and twelve pickleball courts. Defendant argues that Plaintiff can now access half of only the remaining tennis courts[1], without supplemental access to the replacement pickleball courts. Such modification, limiting Plaintiff's right of access, is adverse. Therefore, as far as Defendant asserts that changing tennis courts to pickleball courts without changing Plaintiff's right of access was an acceptable amendment of the Bylaws, it is impermissible as it required the

---

[1] It is not clear to the Court whether Plaintiff can access two or three tennis courts, as half of five tennis courts is two and a half.

majority vote from the Members.

### C. Section 7.3(F) does not give Defendant discretion because the final decision as provided by the Board would be unreasonable.

Section 7.3(F) provides that the Board of Directors will provide the final decision on all questions involving interpretation, construction, or rights and privileges within the Original Bylaws, so long as they act "reasonably and in good faith." (Doc. 38-1 at 27; Doc. 65 at 7). Further, "[t]he Ninth Circuit has noted that, under Arizona law, '[e]very contract contains an implied duty of good faith and fair dealing.'" Circle K Procurement & Brands Ltd. v. Goli Nutrition Inc., No. CV-23-01417-PHX-DJH, 2024 WL 1639143, at *2 (D. Ariz. 2024); Branton v. W. Rsrv. Life Assurance Co. of Ohio, 41 F. App'x 40, 42 (9th Cir. 2002) (citing Rawlings v. Apodaca, 151 Ariz. 149, 153; 726 P.2d 565, 569 (Ariz. 1986)). "The implied duty of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement. The duty arises by operation of law but exists by virtue of a contractual relationship." Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund, 201 Ariz. 474, 490 (2002); Rawlings, 151 Ariz. at 154 (1986).

Here, interpretation that prohibits Plaintiff's access to the original number of tennis courts, or the replacement pickleball courts, violates the implied duty of good faith and fair dealing. While "good faith" is mentioned by Defendant, it cannot be satisfied if it is used to prohibit Plaintiff, the other party, from receiving the benefits and privileges of the agreement that he is entitled to. Beyond the implied duty of good faith and fair dealing, Defendant's final and controlling decision on these questions contractually hinges on "act[ing] reasonably and in good faith." (Doc. 38-1 at 27; Doc. 65 at 7). To act contrary to the guaranteed rights and privileges within the contract cannot in itself be a reasonable act or in good faith. Therefore, Section 7.3(F) in this matter does not give Defendant the final and controlling discretion, as the denial of access to an enumerated right would be a violation of the implied duty of good faith and fair dealing and would be an unreasonable act.

## IV. CONCLUSION

Accordingly, the Court will grant Plaintiff's Motion for Summary Judgment for the following reasons. First, Section 2.1(B)(iii) in the Original Bylaws granted Plaintiff access to one-half of the eight tennis courts or any replacements thereof. The Court finds that the pickleball courts, in this context, were a replacement of the tennis courts. Second, Section 7.3(G) does not allow modification of Section 2.1(B)(iii) in the manner argued by Defendant, because the denial of access to the pickleball courts is a material and adverse modification which requires a majority approval vote from the Members. Third, Section 7.3(F) does not give Defendant discretion because the final decision as provided by the Board would be unreasonable.

The Court grants the Partial Summary Judgment on these limited grounds, finding that the limiting of Plaintiff's access to the tennis courts is a breach of the binding contract between Plaintiff and Defendant. What the damages that are caused by this breach are, or what access Plaintiff would need to be given for Defendant not to breach the contract is not considered.

Therefore,

**IT IS THEREFORE ORDERED granting** Plaintiff's Motion. (Doc. 46).

Dated this 4th day of August, 2025.

_____
Stephen M. McNamee
Senior United States District Judge