**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Corbin A McNeill, Jr., | No. CV-23-02481-PHX-SMM |
| Plaintiff, | **ORDER** |
| v. | |
| CP Boulders LLC, | |
| Defendant. | |

Before the Court is Plaintiff's Fifth Motion for Partial Summary Judgement. (Doc. 50). The Motion is fully briefed. (Docs. 68; 77). For the following reasons, the Court denies the Motion.

### I.    BACKGROUND

Since 2011, Plaintiff Corbin McNeill ("Plaintiff") has been a member of The Boulders Club, a private golf and social club located in Scottsdale, Arizona. (Doc. 1-1 at 5). Upon joining The Boulders Club, members receive a Membership Plan, The Boulders Club Membership Agreement and Bylaws ("Membership Agreement" and "Original Bylaws"), and the Rules and Regulations of the Club. (Id. at 4). The documents are collectively referred to as the "Club Documents". (Id. at 5). It is undisputed that the Club Documents constitute a binding, enforceable contract between the members and the ownership. (See Doc. 52).

Defendant CP Boulders LLC ("Defendant") purchased The Boulders in 2015. (Doc. 1-1 at 7–8). When Defendant became owner of The Boulders, Defendant became

bound by the obligations of the Membership Agreement. (Id.) On March 10, 2023, Defendant amended the Bylaws ("Amended Bylaws"). (Doc. 54 at ¶ 10). Plaintiff disputes the validity of the Amended Bylaws as a whole, in addition to specific provisions to the Amended Bylaws, leading to the instant lawsuit. The validity of the Amended Bylaws provisions would impact the rights Plaintiff enjoys at The Boulders.

Plaintiff filed suit against Defendant in the Maricopa County Superior Court on October 31, 2023, bringing claims for breach of contract. (Doc. 1-1 at 2). Plaintiff alleges that the Amended Bylaws imposed by Defendant violate the Membership Agreement by creating new membership categories and creating materially different rights and privileges of members. (Id. at 14). As well, the Amended Bylaws are alleged to offer new categories of membership with the privileges and benefits previously revoked by Defendant while diminishing Plaintiff's material rights and charging higher fees. (Id. at 15). The Complaint also contains several requests for declaratory judgment on the rights and obligations of the parties.

Plaintiff has filed six discrete Motions for Partial Summary Judgment. (See Docs. 36; 37; 45; 46; 60; 61). Plaintiff has since withdrawn one of his motions. (Doc. 80). The Court denied Plaintiff's First Motion for Partial Summary Judgment (Doc. 98), granted in-part, and denied in-part, Plaintiff's Second Motion for Partial Summary Judgment (Doc. 103), and granted Plaintiff's Fourth Motion for Partial Summary Judgment. (Doc. 104). In Plaintiff's Fifth Motion for Partial Summary Judgment, Plaintiff moves the Court to enter an order finding that Defendant breached Section 4.3 of the Original Bylaws, by creating new membership categories that offered access to Club Facilities, and offered the new memberships to persons who do not own property in The Boulders. (Doc. 50). The Court reviews.

## II.    LEGAL STANDARD

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex

<u>Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

### III.    ANALYSIS

Plaintiff moves the Court to issue a ruling stating that "Defendant breached the Original Bylaws, [Section] 4.3, by creating and offering new categories of membership to persons who do not own property in The Boulders Development." (Doc. 50 at 2). Specifically, Plaintiff disputes the creation of two categories of membership that appear in the Amended Bylaws: the Associate Racquet Sports Membership and the Premier Golf Membership. Section 4.3 of the Original Bylaws stated, in relevant part:

> [Defendant] may offer regular Golf and Premier Golf Memberships to persons who are not owners of Residential Lots ("Non-Property Owners") as [Defendant] determines from time to time, so long as the total number of Premier Golf and regular Golf Memberships does not exceed 400 . . . Should [Defendant] offer Premier or regular Golf Memberships, Premier Social, or Premier Clubhouse Memberships to Non-Property Owners, Members will be given an opportunity to recommend candidates for such membership in the Club. Associate Tennis Memberships will be offered and issued only to Non-Property Owners, and will not be made available to persons who own or purchase a Residential Lot in the Community. [Defendant] will not create and offer any new category of Membership offering access to any of the Club Facilities to persons who do not own property in The Boulders Development."

(Doc. 38-1 at 15-16, Section 4.3 of the Original Bylaws.)

Defendant admits it offered the disputed memberships under the Amended Bylaws to persons who do not own property in the Boulders Development. <u>See</u> (Doc. 23 at ¶¶ 60; 69) ("Boulders admits that the so-called 'new memberships' include 48 so-called 'non-residents'") ("Boulders admits only that [m]emberships were offered to 'persons who do not  own property in the Boulders Development.'"). Therefore, the Court is asked to

consider if the two categories of membership appearing in the Amended Bylaws, the Associate Racquet Sports Membership and the Premier Golf Membership, constitute "new categories of membership."

**A. Associate Racquet Sports Membership**

Turning first to the Associate Racquet Sports Membership, the Court finds that Defendant did not create a new category of membership. Plaintiff states that the "Associate Racquet Sports is not a membership category recognized under the Original Bylaws—the Original Bylaws say[s] nothing about an Associate Racquet Sports [M]embership. Associate Racquet Sports is a 'new category' of membership . . . which standing alone establishes Defendant's breach of the Original Bylaws, [Section] 4.3." (Doc. 50 at 5). Further, Plaintiff states that Associate Racquet Sports Membership offers access to club facilities. (Doc. 50 at 8).

The Court finds that the Associate Racquet Sports Membership does differ from the Associate Tennis Membership that was enumerated in the Original Bylaws. The Associate Racquet Sports Membership is expanded from a limit of fifty members to a limit of one-hundred members, has a different dues structure than the Associate Tennis Membership, and regulates access to the newly built pickleball courts, rather than just the tennis courts. (Doc. 38, Ex. B. at § 7). The question before the Court is whether Defendant was within its rights to amend the Bylaws to change the terms of the Associate Tennis Membership to the form it appears in the Amended Bylaws, thus making it a permissible amended version of the original membership classification, rather than a new membership classification entirely. The Court finds that the "Associate Raquet Sport Membership" is not a new membership, as it has been only altered in a manner allowable under the Original Bylaws.

Plaintiff advances three arguments as to why it is a new membership class. First, Plaintiff argues that the Original Bylaws limited the Associate Tennis Membership category to fifty members, while the Amended Bylaws limited the Associate Racquet Sport Memberships to one-hundred memberships. (Doc. 77 at 4 (citing (Doc. 38, Ex. B at

§ 1.4); (Doc. 38 Ex. F at § 7.1)).

> The Court finds relevant Section 7.3 of the Original Bylaws, which states: <u>Amendment to the Membership Agreement</u>. Provided that any modification of this Agreement does not materially and adversely affect the then-current Members' rights under Sections 1.8, 2.1, 2.2. 2.3, 2.4, 4.3, 5.2B, 5.2C, 5.3, 6.1, 6.3, 6.4, 6.5, 6.7, 7.2B, 7.2C, 7.3A, 7.3C, and 9.5 … The Boulders, in its sole discretion, shall be entitled to unilaterally modify and amend this Agreement (including establishing, changing and terminating various Membership classifications and the terms of admission, privileges and facilities available to the Members within each Membership classification).

(Doc. 38, Ex. B at § 7). Defendant "in its sole discretion," was entitled to modify and amend the Original Bylaws, including by establishing various membership classification, and changing the privileges and facilities available to the Members within each membership classification, so long as it did not "materially and adversely affect the then-current Members' rights" under certain enumerated sections.

The section that provides the fifty-membership limit for Associate Tennis Membership was in Section 1.4 of the Original Bylaws, which was not an enumerated section. Therefore, Defendant, in its sole discretion, was permitted to increase the limit on Associate Tennis Memberships. As the amendment was permissible under the Original Bylaws, it cannot be seen as evidence of the creation of a new membership class provided to non-members.

Second, Plaintiff points to the fact that the Amended Bylaws' Associate Racquet Membership has a different dues structure than the Original Bylaws' Associate Tennis Membership. (Doc. 77 at (citing (Doc. 38 Ex. B at § 5.2(C); (Doc. 38 Ex. F at § 8.2.).

While the changed dues structure falls under Section 5.2(C), which is one of the enumerated sections, Plaintiff does not explain how the change "materially or adversely affects" original members' rights under the section.[1] Looking at the provisions in the two set of bylaws, the Original Bylaws cap monthly dues increase at 5%, while the Amended

---

[1] The Court is also dubious as to whether Plaintiff has the standing to argue that the amendments to the Associate Tennis Membership were impermissible, as he himself does not have an Associate Tennis Membership. As the Court finds other dispositive grounds to dismiss Plaintiff's arguments, the Court will table this question for another day.

Bylaws contain no limit to such increases. (Id.) ("The Board may increase monthly Dues from time to time by an amount that is reasonable in light of the following factors: (A) the average percentage amount by which other comparable first-class private clubs raise their monthly dues over a given period of time as determined by independent third-party research; and (B) Membership demand for new and/or upgraded Club Facilities."). Therefore, as Defendant points out regarding the Premier Golf Memberships that will be discussed below, this amendment appears to protect original Members rights, rather than "adversely" or "materially" affect their rights, as its "grandfathers" in provisions to the Amended Bylaws to which the original members previously agreed. (See Doc. 69 at ¶ 5). Therefore, the amended dues structure is not evidence of the creation of a new class of membership.

Finally, Plaintiff states that it is Defendant's position that "pickleball was not mentioned in the Original Bylaws and that no Members under the Original Bylaws have any right to access the pickleball courts. If that is true, Defendant cannot have simply renamed the Associate Tennis [M]embership and given those Members rights, privileges and obligations that never existed before." (Doc. 77 at 5).

The Court dealt with a similar contention from Plaintiff in his Fourth Motion for Partial Summary Judgment. (Doc. 104). The Court, in ruling on Plaintiff's Fourth Motion for Partial Summary Judgment, found that limiting Plaintiff's access to the tennis courts, after the conversion of three tennis courts into pickle balls courts, was an impermissible amendment to the Original Bylaws, as it materially and adversely affected his rights under Section 2.3. (Id.) Therefore, given that Order's directive that Plaintiff has the right to access the same amount of tennis courts he had access to under the Original Bylaws, or has the right to access to a certain number of pickleball courts, it cannot now be argued that any original member was "materially and adversely" effected in any manner by the alteration of the "Associate Tennis Membership" to the "Associate Raquet Sports Membership." Each original Associate Tennis Member would be granted the same or equivalent access to the courts as they had under the Original Bylaws.

Plaintiff's arguments therefore are unpersuasive. The Court finds that the Associate Raquet Sports Membership is not a new class of membership, but rather just an amended Associate Tennis Membership. Further, the amendments did not breach Section 4.3. Nor can the amendments be considered material and adverse under Section 7.3. For these reasons, the Court denies the Partial Summary Judgment in regard to the Associate Raquet Sports Membership.

**B. Premier Golf Membership**

Moving on to the Premier Golf Membership, Plaintiff states that although the "Premium Golf Membership" in the Amended Bylaws has an identical name to the "Premium Golf Membership" in the Original Bylaws, it is in fact a new category of membership. (Doc. 50 at 5). Specifically, Plaintiff points to five ways that the two memberships differ: caps on monthly membership dues increases; rights to amend bylaws' protections against dues increases; rights to amend bylaws' protections against membership increases; tennis and pickleball court access; discounts; and food & beverage minimums. (Doc. 50 at 6-7). As the Premier Golf Membership described in the Original Bylaws, and described in the Amended Bylaws, have different "rights, privileges, obligations, and dues," Plaintiff argues that the Amened Bylaws created a new category of membership, in violation of Section 4.3.

The Court does not find the differences in membership offered to new members as opposed to members under the Original Bylaws show a new class of membership. As stated above, Section 7.3 gives Defendant the right to amend the bylaws, including by establishing, changing and terminating various membership classifications and the terms of admission, privileges and facilities available to the Members within each membership classification, so long as the amendments do not materially and adversely affect the original members under certain enumerated sections.

Most of the amendments pointed to by Plaintiff result in more favorable terms for the original members. While the Original Bylaws had a 5% annual cap on monthly dues increases, the Amended Bylaws contains no such cap. <u>Compare</u> (Doc. 38 Ex. B at §

5.2(C)), <u>with</u> (Doc. 38 Ex. F at § 8.2.3). Further, the Original Bylaws provide original members with the specific right to 15% discounts at the golf pro, tennis pro, and resort gift shop, and to a 20% discount on food, beverages, and wine, while the Amended Bylaws only provide new members with an unspecified discount. <u>Compare</u> (Doc. 38 Ex. B at § 3.1(ii)–(iv)), <u>with</u> (Doc. 38 Ex. F at § 3.6.3). Plaintiff does not attempt to show that this unspecified discount is greater than the discount original members receive. Further, in the words of Plaintiff, "Premier Golf members under the Original Bylaws are entirely protected from the imposition of a food-and-beverage minimum, but under the Amended Bylaws, Premier Golf members are at the mercy of whatever food-and-beverage minimum the Board may choose to establish. <u>Compare</u> (Doc. 38 Ex. B at § 5.2(B)), <u>with</u> (Doc. 38 Ex. F at § 8.2.2). Therefore, Plaintiff cannot show, and does not attempt to show, that the amendments were adverse to him, as an Original Member.

Plaintiff argues that the right of access to pickleball courts present in the Amended Bylaws, with the Original Bylaws being silent on the yet to be created courts, is evidence that the Premier Golf Membership appearing in the Amended Bylaws is a new membership category. While the lack of access to the newly created pickleball courts or replacement tennis courts can be seen as a material and adverse change to the original members, the Court discusses above how the Court's Order on Plaintiff's Fourth Partial Summary Judgment resolves this issue. <u>See also</u>, (Doc. 104).

Finally, Plaintiff argues that the lack of protection against an increase in the number of members differentiates the Amended Bylaws' Premier Golf Membership versus the Original Bylaws' Premier Golf Membership. However, Plaintiff does not argue that Defendant has already or intends to increase memberships past the cap enumerated in the Original Bylaws. The provisions that may prevent them from doing so, Section 14.6.4 and Section 14.7 of the Amended Bylaws, is discussed in the Response to Plaintiff's Sixth Motion for Partial Summary Judgment. (Doc. 75). As far as the current Motion is concerned, whether Defendant breaches a section of the Original Bylaws that limits the creation of additional new members is not relevant as to whether a new

membership classification has been created.

As such, the Court finds that the Premier Golf Membership that appears in the Amended Bylaws is the same membership category that appears in the Original Bylaws, which have been amended in permissible ways.

## IV.    CONCLUSION

For the proceeding reasons, the Court denies Plaintiff's Fifth Partial Summary Judgement. The Court finds that the Amended Bylaws did not impermissibly create new membership category in violation of Section 4.3 of the Original Bylaws. Rather, the Amended Bylaws were permissibly amended in so far as the adjustments that were made to the Associate Tennis Membership and the Premier Golf Membership.

For good cause shown,

**IT IS ORDERED denying** Plaintiff's Fifth Motion for Partial Summary Judgment. (Doc. 50).

Dated this 27th day of August, 2025.

Stephen M. McNamee
Senior United States District Judge