**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Corbin A McNeill, Jr.,

Plaintiff,

v.

CP Boulders LLC,

Defendant.

No. CV-23-02481-PHX-SMM

**ORDER**

Before the Court is Plaintiff's Tenth Motion for Partial Summary Judgment. (Doc. 155). Defendant filed a response. (Doc. 166).[1] For the following reasons, the Court grants Plaintiff's Motion.

## I. BACKGROUND

Plaintiff Corbin A. McNeill, Jr. ("Plaintiff") has been a Premier Golf Member of the Boulders Club since 2011. (Docs. 156 ¶¶1–2; 166 ¶¶1–2). When Plaintiffs application was accepted, he received, among other documents, "The Boulders Club Membership Agreement and By-laws, Amended and Restated 5/23/08." (Ibid. ¶ 3). These documents continued to govern Plaintiff's rights and obligations after Defendant acquired the Boulders Club in 2015, at which point the Bylaws were updated to reflect new ownership but were otherwise unchanged (the "Original Bylaws"). (See ibid. ¶¶ 3–7).

Section 7.3(G) of the Original Bylaws details the procedures to be followed for any potential amendments and cannot be modified in any way without an approving

[1] The Court permitted reply briefs only if the parties could demonstrate good cause. (Doc. 143 at 1).

majority vote of the then current Members:

> G. Amendment to Membership Agreement. Provided that any modification or amendment of this Agreement does not materially and adversely affect the then current Members' rights under Sections 1.8, 2.1, 2.2, 2.3, 2.4, 4.3, 5.2 B, 5.2 C, 5.3, 6.1, 6.3, 6.4, 6.5, 6.7, 7.2B, 7.2C, 7.3 A, 7.3 C and 9.5, … The Boulders, in its sole discretion, shall be entitled to unilaterally modify and amend this Agreement . . . . The Boulders may modify and amend this Agreement in a manner which materially and adversely affects the then-current Members' rights under Sections 1.8, 2.1, 2.2, 2.3, 2.4, 4.3, 5.2 B, 5.2 C, 5.3, 6.1, 6.3, 6.4, 6.5, 6.7, 7.2B, 7.2C, 7.3 A, 7.3 C and 9.5, … if such modification or amendment is approved by more than 50% of the total of the then current Members (if the modification or amendment affects all of the Membership classifications) or by more than 50% of the then current Members of the applicable Membership classifications (if the modification or amendment affects less than all of the Membership classifications). All such modifications and amendments shall be in writing and shall be sent to all Members. This Section 7.3 G may not be modified or amended without the approval of more than 50% of the total of the then current Members. Notwithstanding the foregoing, only Original Members and those Members in each Membership category who own a Residential Lot shall be entitled to vote on proposed amendments to modify this Agreement.

(Ibid. ¶ 8) (emphasis added).

In January 2023, Plaintiff and other Members under the Original Bylaws (the "Original Members") voted on, and rejected, a proposal from Defendant to increase the number of Golf Memberships from 400 to 440. (Ibid. ¶ 11). Two months later, Defendant attempted to amend the Original Bylaws through a document entitled "The Boulders Club Bylaws," which purport to be effective as of March 10, 2023, and which Defendant later reissued in February 2025 (the "Amended Bylaws"). (Ibid. ¶¶ 12–14). Defendant did not put the Amended Bylaws up for a vote before circulating them to members. (Ibid. ¶¶ 13–15). Accordingly, the Amended Bylaws were not approved by "more than 50% of the total of the then current Members" in March 2023. (Ibid. ¶¶ 8, 12–15).

The Amended Bylaws claim to "expressly supersede the Prior Bylaws and any other Membership Agreement and Bylaws in effect prior to the Effective Date (collectively, 'Superseded Documents')." (Ibid. ¶ 16). The Amended Bylaws later say "[i]n the event of any inconsistency between the terms and provisions of the Bylaws and

the terms and provisions of any of the Superseded Documents, the terms of the Bylaws shall govern and control, except," as relevant here, that "Original Members shall have the rights set forth" in the protected provisions enumerated in Section 7.3(G), "unless these [Amended] Bylaws have been adopted or ratified by a vote of those Members eligible to vote on Bylaw amendments." (Ibid.) Original Members are defined under the Amended Bylaws as "[t]hose Members holding Memberships in The Boulders prior to the Effective Date." (Ibid. ¶ 17).

Under Section 3.7.1 of the Amended Bylaws, Members allowed to vote on proposed amendments that require a Membership vote include any Members who "own a Residential Lot." (See ibid. ¶ 19). This definition includes Members who joined after the Effective Date of the Amended Bylaws ("2023 Members"). (See ibid.) The Disputed Bylaws provide:

> For any vote, whether conducted in-person at a meeting or remotely, a quorum will consist of twenty-five percent (25%) of the Members entitled to vote. With regard to an in-person vote, the total number of Members in attendance will be counted to determine the existence of a quorum. With regard to a remote vote, the total number of ballots received by The Boulders will be counted to determine the existence of a quorum.

(Ibid. ¶ 20). 2023 Members, however, are not protected by Section 14.6.4 of the Amended Bylaws. (See ibid. ¶ 16).

Also, the Amended Bylaws purportedly give Defendant the right to "make any amendment to the Bylaws that does not expressly require a vote of the Members." (See ibid. ¶ 22; see also ibid. ¶ 21). The Amended Bylaws provide:

> The Board is authorized, without any vote of the Members, but subject to the terms of Section 3.1.2, to (i) establish new classifications of Memberships (ii) modify the criteria, rights and obligations of any existing classification of Memberships consistent with the vision, mission and/or needs of The Boulders (except to the extent that such modifications are inconsistent with Section 14.6) and/or (iii) cease the issuance of Memberships in any classification of Memberships.

(Ibid. ¶ 21). The Amended Bylaws also provide that "The Board may, by majority vote, make any amendment to the Bylaws that does not expressly require a vote of the Members. The Board will promptly notify the Members of any such amendments." (Ibid.

¶ 22). The parties dispute how the Amended Bylaws' voting mechanisms operate with regard to Section 7.3(G) protected rights and whether the 2023 Members may participate in votes to nullify Plaintiff's protected rights.

At the April 7, 2026, status conference, in response to the Court's inquiry regarding remaining disputed issues, counsel for Plaintiff raised this issue:

> MR. ROSS: … [I]f [Defendant] believes that the 2023 members don't get to vote to affect [Plaintiff]'s rights, then we agree and there's nothing to declare . . . . If, on the other hand, [Defendant] said, under the new bylaws, the 2023 members get to vote to impair [Plaintiff]'s rights under his bylaws, . . . then what we do have is a controversy and an interpretation relative to those provisions that is ripe for judicial determination.

(Ibid. ¶¶ 23–24). Defendant, when subsequently questioned by the Court, stated that 2023 Members do have such voting rights:

> THE COURT: . . . Mr. Vinci, would you care to elaborate on . . . the folks of the 2023 voting on the rights of [Plaintiff] or not, do you think that's still in the lawsuit?
>
> MR. VINCI: Yeah, our position is that the bylaws provide that property owner members can vote, and, you know, they could vote.

(Ibid. ¶¶ 25–26). Further, the 2023 members pay $1,031 per month compared to 2008 members like Plaintiff who pay $650 per month. (Doc. 166-1 ¶ 27).

Plaintiff filed suit against Defendant in the Maricopa County Superior Court on October 31, 2023, bringing claims for breach of contract. (Doc. 1-1 at 2). Plaintiff has filed ten discrete Motions for Partial Summary Judgment. (See Docs. 36; 37; 45; 46; 60; 61; 130; 151; 153; 155). Plaintiff has since withdrawn one of his motions. (Doc. 80). The Court denied Plaintiff's First Motion for Partial Summary Judgment (Doc. 98), granted in-part, and denied in-part, Plaintiff's Second Motion for Partial Summary Judgment (Doc. 103), granted Plaintiff's Fourth Motion for Partial Summary Judgment (Doc. 104), denied Plaintiff's Fifth Motion for Partial Summary Judgment (Doc. 111), granted Plaintiff's Seventh Motion for Partial Summary Judgment (Doc. 167), denied Plaintiff's Eighth Motion for Partial Summary Judgment (Doc. 168), and granted Plaintiff's Ninth Motion for Partial Summary Judgment (Doc. 169).

## II. LEGAL STANDARD

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010). "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." Id. federal As the Ninth Circuit has said, "[t]his burden is not a light one." Id. To meet this burden, the "non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." Id. Additionally, parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[ ] that the materials cited do not establish the absence ... of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).

## III. DISCUSSION

Plaintiff seeks a (1) declaration from the Court that the 2023 Members have no right to vote to modify his protected rights and (2) a partial summary judgment ruling that Defendant breached the Original Bylaws by modifying the coverage of Section 7.3(G) without the required approval of 50% of the then-current Members. (Doc. 155 at 5). For the following reasons, the Court grants Plaintiff's Motion.

### A. Member Voting Rights

Plaintiff's first claim seeks declaratory relief under the Federal Declaratory Judgment Act for clarification on the voting provisions in the Amended Bylaws that conflict with Section 7.3(G) of the Original Bylaws. (Doc. 155 at 5). The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, "does not grant litigants an absolute right to a legal determination." United States v. State of Wash., 759 F.2d 1353, 1356 (9th Cir. 1985) (citations omitted). "The decision to grant declaratory relief is a matter of discretion, even when the court is presented with a justiciable controversy." Id. (internal citations omitted). "Declaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Guerra v. Sutton, 783 F.2d 1371, 1376 (9th Cir. 1986) (internal quotations omitted). The district court may also consider whether retaining jurisdiction would prevent duplicative litigation. See Siino v. Foresters Life Ins. & Annuity Co., 133 F.4th 936, 943 (9th Cir. 2025).

Defendant contends that Plaintiff's argument regarding hypothetical future voting violates the basic rule that declaratory relief "may not be made the medium for securing an advisory opinion in a controversy which has not arisen." (Doc. 166 at 7) (quoting Coffman v. Breeze Corp., 323 U.S. 316, 324 (1945)). Defendant further contends that Plaintiff's request to adjudicate how the Amended Bylaws' voting mechanics should operate, divorced from any actual or contemplated vote, asks for "an opinion advising what the law would be upon a hypothetical set of facts." (Id.) (quoting Calderon v.

Ashmus, 523 U.S. 740, 746 (1998). But Plaintiff contends that declaratory relief is appropriate here because Defendant has superimposed its Amended Bylaws over Plaintiff's Section 7.3(G) rights, and that the requested declaratory relief is no more than "an adjudication of present right upon established facts." (Doc. 155 at 9) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 242 (1937). The Court agrees with Plaintiff.

The Court finds that it has authority to adjudicate Plaintiff's requested relief because it may prevent duplicative litigation and "the adjudication [] could serve a useful purpose in clarifying the legal relations at issue." Siino, 133 F.4th at 943-44 (citations omitted). Further, Plaintiff's request for declaratory relief speaks to the future obligations of the parties, which is an issue that is not addressed by his breach of contract claims. See id. Adjudication of this claim will help clarify what provisions apply to proposed changes that may affect Plaintiff's protected rights under Section 7.3(G). Thus, the Court finds that adjudication of Plaintiff's declaratory relief claim is not a waste of judicial resources. See id. (citation omitted). The Court will now turn to the merits of Plaintiff's claim.

Plaintiff contends that Section 7.3(G) controls over the Amended Bylaws provisions that, if applied, would unilaterally change who can vote, how many votes are needed for approval, and when votes occur. (Doc. 155 at 5). Plaintiff provides three reasons in support of his position. First, Plaintiff contends that where Section 7.3(G) protected all "then-current Members" and allowed only members whose protected rights might be adversely affected to vote on a modification, the 2023 Amended Bylaws create a new group of members with no Section 7.3(G) protections who are entitled to participate in votes that dilute Section 7.3(G). (Id.) Second, Plaintiff contends that where the Original Bylaws require changes to protected rights to be supported by a vote, the Amended Bylaws require only the support of a majority of members who vote. (Id. at 7). Third, Plaintiff contends that where the Original Bylaws permit modification of rights protected under Section 7.3(G) to take effect only after an approving vote, the Amended Bylaws necessarily require some modifications to such rights to take effect before a vote to approve those modifications is held. (Id.) For the reasons above, Plaintiff argues that

Defendant's unilaterally imposed Amended Bylaws refashioned how the Section 7.3(G) provisions function, and if the Amended Bylaws are allowed to stand these changes constitute impermissible changes under Section 7.3(G). (Id. at 9). The Court agrees.

This Court already held that "the protections of Section 7.3(G) cannot be modified or amended unilaterally by the Board, as straightforwardly provided for in the Original Bylaws." (Doc. 113 at 4) (quoting Liberty Ins. Underwriters, Inc. v. Weitz Co., LLC, 158 P.3d 209, 212 (Ariz. Ct. App. 2007) ("If the contractual language is clear, we will afford it its plain and ordinary meaning and apply it as written."). This Court also already held that Section 14.6.4 of the Amended Bylaws differs from Section 7.3(G) of the Original Bylaws because it lacks the protection of Section 7.3(G) itself. (Id.) This is because the Original Bylaws provided that "Section 7.3 G may not be modified or amended without the approval of more than 50% of the total of the then current Members." (Id.)

Here, Defendant did not follow the required procedure to amend Section 7.3(G) of the Original Bylaws. The language in the Original Bylaws is clear: "Section 7.3 G may not be modified or amended without the approval of more than 50% of the total of the then current Members." (Docs. 156 ¶ 8; 166-1 ¶ 8) (emphasis added). Thus, Defendant was required to receive approval of more than 50% of the then current Members. But Defendant undisputably did not. (See ibid. ¶¶ 8, 12–15).

Defendant also does not dispute any material facts. (See Doc. 166). Rather, Defendant only argues that Plaintiff's claims are unripe and non-justiciable. (See id. at 4-8). But, as explained above, the Court finds that Plaintiff's claims are ripe and justiciable. Thus, the Court finds that there are no disputes of any material facts the Court grants Plaintiff's Motion on this claim. See Celotex, 477 U.S. at 323 ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. . . . [and] [t]he moving party is 'entitled to a judgment as a matter of law[.]'"). Accordingly, the Court finds that Section 7.3(G) controls over conflicting provisions of the Amended Bylaws, and that, consequently, 2023 Members cannot vote on proposed bylaws amendments that affect Plaintiff's rights under Section

7.3(G).

**B. New Memberships**

Next, Plaintiff claims that Defendant breached its contract with Plaintiff. (Doc. 155 at 10). Plaintiff contends that Defendant's creation of new memberships without reference to Section 7.3(G) not only exposes Plaintiff's rights to potential nullification, but the Amended Bylaws also stripped Plaintiff's right to vote on material and adverse changes to rights shared with other current members. (Id.) In response, Defendant contends that Plaintiff's Motion does not advance any new arguments nor facts regarding the creation of new membership categories previously presented to the Court, that Plaintiff's complaint regarding new membership classes does not implicate his own rights, and that Plaintiff lacks standing to raise concerns relating to others' rights. (Doc. 166 at 9-10).

The Court will first address the standing issue. The elements of standing are well-established: the party must have suffered (1) an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of," meaning the injury must be "fairly traceable to the challenged action of the defendant"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (cleaned up). To be particularized, an injury must "affect the plaintiff in a personal and individual way." Id. at 560. "A litigant must also meet non-constitutional or prudential requirements to invoke federal jurisdiction." United States v. Lazarenko, 476 F.3d 642, 649 (9th Cir. 2007). "Prudential standing encompasses 'the general prohibition on a litigant's raising another person's legal rights. . . ." Id. (quoting Allen v. Wright, 468 U.S. 737, 751 (1984).

Defendant contends that Plaintiff lacks standing to raise concerns relating to the legal rights of others. (Doc. 166 at 10). As explained above, the law is well-established that a litigant cannot raise another person's legal rights. See Lazarenko, 476 F.3d at 649;

see also Allen, 468 U.S. at 751. At the same time, "[t]he rights of members of a private organization are governed by the articles of incorporation and by-laws, which constitute a contract between the members and the organization, and among the members themselves." Rowland v. Union Hills Country Club, 757 P.2d 105, 108 (Ariz. Ct. App. 1988) (emphasis added and citations omitted). Thus, Plaintiff has standing to pursue his individual claims because the Original Bylaws are a contract between Plaintiff and Defendant. (Doc. 155 at 10).

Next the Court will turn to the merits of Plaintiff's claim. Plaintiff contends that "Defendant tried to skirt the restrictions of Section 7.3(G) by creating a new set of bylaws with new sections, new numbering and new members" to "eviscerate" Original Members' rights. (Doc. 155 at 11-12). Specifically, Plaintiff argues that (1) Defendant modified Section 7.3(G) without an approving vote of Plaintiff and the "then current Members" even though "Section 7.3 G may not be modified or amended without the approval of more than 50% of the total of the then current Members"; (2) the Amended Bylaws allow changes to protected rights without approval from a majority of adversely impacted Members; (3) the Amended Bylaws make changes to protected rights effective before an approving vote; and (4) the Amended Bylaws gut Plaintiff's and his fellow Members' ability to influence the bylaws and to reciprocally regulate their relative rights to common amenities, reducing the Club to a mere facility. (Id. at 12). For these reasons, Plaintiff contends that these modifications breached Defendant's contract with Plaintiff because Defendant made these modifications without a member vote and deprived him of rights he enjoyed under Section 7.3(G). (Id.)

In response, Defendant contends that the Court rejected Plaintiff's same arguments in its order denying Plaintiff's fifth motion for partial summary judgment. (Doc. 166 at 8-10). But upon review of the record, the Court finds that Plaintiff's arguments in the instant motion are distinguishable from Plaintiff's arguments in his fifth partial motion for summary judgment. First, this Court's prior Order addressed a different subject matter. In the prior Order, the question before the Court was whether Defendant was

within its rights to amend the Bylaws to change the terms of the Associate Tennis Membership or if the changes created a new membership. (Doc. 111 at 4). Here, rather, the question before the Court is whether Defendant breached Section 7.3(G) and contravened the fundamental purpose of the Bylaws by creating new memberships not protected by or subject to Section 7.3(G). (Doc. 155 at 10). Second, in the prior Order this Court based its decision on the finding that the "Associate Raquet Sport Membership" was not a new membership because it was "altered in a manner allowable under the Original Bylaws." (Doc. 111 at 4). But, here, Defendant created a new membership in a manner that is not allowed under the Original Bylaws.

The language in the Bylaws is clear and unambiguous. As explained above, Defendant modified Section 7.3(G) without the requisite member vote and these modifications deprived Plaintiff of rights he enjoyed under Section 7.3(G). Accordingly, the Court finds that Plaintiff is entitled to summary judgment in his favor on Count III, and the Court finds that Defendant breached its contract with Plaintiff under the Club Documents by creating new memberships that are not covered under Section 7.3(G).

## IV. CONCLUSION

The Court will grant Plaintiff's Tenth Partial Motion for Summary Judgment because Defendant breached Section 7.3(G) of the Original Bylaws when it imposed its Amended Bylaws on Plaintiff without the requisite member vote. Accordingly, the Court finds that Section 7.3(G) controls over conflicting provisions of the Amended Bylaws, and that Defendant breached its contract with Plaintiff under the Club Documents by creating new memberships that are not covered under Section 7.3(G).

**IT IS THEREFORE ORDERED granting** Plaintiff's Tenth Motion for Partial Summary Judgment. (Doc. 155).

Dated this 7th day of October, 2026.

Stephen M. McNamee
Senior United States District Judge